IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 3:14-667-JFA |
| ) | |
| v.    ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| DEMORY ROBINSON    ) | |
| _____) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 1397). Seeking compassionate release, the defendant states that his serious medical conditions, coupled with the COVID-19 pandemic, constitute an extraordinary and compelling reason for his immediate release.

The government concedes that the defendant has demonstrated an extraordinary and compelling reason for consideration of a sentence reduction. However, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant did not reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916

1

F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of

2

imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence

3

reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court may reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, __ F.4th __, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021).

It appears to this court that the defendant has fully exhausted his administrative

remedies, and the government concedes the same. Therefore, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

The defendant contends that he suffers from obesity and Type 2 diabetes. The Presentence Report (PSR) prepared six years ago, indicates that the defendant is in "good physical health." It does note that following his arrest, the defendant indicated that he has suffered from acid reflux. This condition was apparently treated with medication by the medical staff at the detention center.

In any event, the government, with commendable candor, agrees that the defendant has demonstrated an extraordinary and compelling reason because of the fact that obesity and diabetes have been identified by the CDC as medical conditions that can be exacerbated by COVID-19. Accordingly, the court will conclude that the defendant has, based on his medical condition, demonstrated an extraordinary and compelling reason for consideration of a sentence reduction.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. In November 2014, the defendant was one of 17 individuals named in a 2-Count Superseding Indictment. The defendant signed a written Plea Agreement (ECF No. 449) and pleaded guilty to Count 1 charging him with conspiracy to possess with intent to distribute and distribute 500 grams or more of cocaine

and 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 846.

The government filed an Information pursuant to 21 U.S.C. § 851 (ECF No. 198), notifying the defendant that he was subject to increased penalties based upon several prior felony drug offenses.

The Presentence Report (PSR) (ECF No. 670) prepared by the United States Probation Office (USPO) revealed a large number of controlled substances attributable to the defendant as part of his relevant conduct. Because there were differing controlled substances, they were converted to their marijuana equivalent in order to establish an aggregate amount, pursuant to United States Sentencing Guideline (USSG) § 2D1.1. The conversion indicated that the defendant was accountable for 1,530.45 kilograms of marijuana equivalent for purposes of establishing his base offense level of 30.

The defendant was determined to be a Career Offender, thus his total offense level became 34 and his criminal history category was VI. The resulting Guideline range was 260 to 327 months. In August 2015, this court sentenced the defendant to 240 months with 10 years of supervised release to follow. The 240-month sentence was imposed after this court issued a substantial downward departure on the government's motion. The defendant did not file a direct appeal of his sentence.

Thereafter the defendant continued his cooperation and received a second motion for a reduction in his sentence as a reward. This court granted the motion and further reduced the defendant's sentenced to 180 months. To date, the defendant has served just more than

half of his 180-month sentence.

    2.  *History and Characteristics of the Defendant.*  The defendant was reared by his parents in the Lexington and Columbia areas of South Carolina.  His mother passed away in 2000 and his father, is now retired and lives in the northern part of South Carolina with his wife.  The defendant stated to the USPO that he sometimes felt resentment towards his father during childhood and said that his father should have "put his foot down as the man of the house."  The defendant is single, never having married, and has no children.

*Post Sentencing Conduct*

Since his sentencing in this case, the defendant has had one disciplinary infraction while incarcerated for possessing an unauthorized item.  The vocational/educational record reveals that he has taken courses in English, correspondence victim awareness, problem solving, reentry support, and AIDS awareness.  The defendant enrolled in the GED program, but his data report indicates that his progress is "unsatisfactory."  The defendant is currently 47 years old.  His projected release date is January 1, 2028.

The defendant's motion suggests that if he is released to home confinement, he will reside in Cayce, South Carolina with his elderly parents. He contends that his mother is 65 years old and his father is 77 and suffers from a host of ailments.  The defendant's PSR, however, prepared in 2015, indicates that the defendant's mother is deceased.  It also indicates that the defendant has three siblings.  See ECF No. 670 at ¶ 58.  The defendant does not give any explanation why his siblings are not able to care for their aging father.  Accordingly, although this court is fully aware of this ground asserted for relief, the court

respectfully declines to order the defendant's release based upon his family situation.

The defendant's prior criminal convictions include the following on the dates indicated:

(1) Possession with intent to distribute cocaine (1991);
(2) Distribution of crack cocaine (1994);
(3) Strong Arm Robbery (2000);
(4) Distribution of crack cocaine third offense (2000);
(5) Trespassing (1999);
(6) Possession of crack cocaine - third offense (2000);
(7) Possession of other controlled substances (2014);
(8) Simple possession of marijuana (2013).

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. Cocaine and crack cocaine are both powerful stimulants that continue to be a major problem in the Midlands area of South Carolina.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* As noted above, the defendant was responsible for significant quantities of dangerous controlled substances. The defendant has numerous convictions for drug offenses spanning

9

a number of years. He has served less than half of the sentence imposed. He was not a young man without a criminal record when his federal sentence was imposed. To order his immediate release at this time would present a danger to the community.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[1] (ECF No. 1397).

IT IS SO ORDERED.

January 4, 2022　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")